UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
NOV 3 2011
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

EDDY R. BAILEY,

    Plaintiff,

v.                                                      ACTION NO. 2:10cv129

THE CHRISTIAN BROADCASTING NETWORK,
OFFICER Y. MORENO, and
CHIEF CHRIS MITCHELL,

    Defendants.

## MEMORANDUM ORDER AND OPINION

    Plaintiff Bailey brought this pro se action, alleging, among other claims, that Defendants falsely arrested him and used excessive force against him. Some of Plaintiff's claims and some Defendants were dismissed by prior Orders dated February 3, 2011, and September 9, 2011. The Court denied summary judgment as to the remaining claims asserted against Defendant Moreno on September 9, 2011. The remaining claims as set forth in Plaintiff's Second Amended Complaint and as asserted pursuant to 42 U.S.C. § 1983 were tried in a bench trial on September 13, 2011. Prior to commencing the trial, the Court had ruled that Requests for Admission were deemed admitted. Trial Tr. at 4-5, 10; Order filed August 31, 2011, ¶ 9. Plaintiff's objections to the August 31, 2011, Order (D.E. # 168) are overruled. Defendant's Motion for Leave to File Supplement (D.E. # 166) is **GRANTED**.

At the conclusion of Plaintiff's evidence at trial, Defendant moved for judgment as a matter of law.[1] The Court indicated at trial that it would grant the motion. This opinion explains the Court's conclusions of law and sets forth its findings of fact that are relevant to the Court's determination. The Court first addresses the facts related to the initial stop of Plaintiff.

Plaintiff's wife is an employee of CBN; Plaintiff is not. Trial Tr. at 18, 30 (D.E. # 173, hereinafter "Tr."). On January 4, 2010, Plaintiff drove a vehicle onto CBN property. Tr. at 30, 174. On January 4, 2010, Plaintiff's drivers license was expired. Tr. at 180. The vehicle displayed a rejected inspection sticker. Tr. 31. The vehicle failed inspection in October 2009, and the rejection sticker had remained on the vehicle since then. Tr. at 114, 134, 184. Plaintiff had been stopped previously on CBN property for the same expired vehicle inspection sticker. Id.; Requests for Admission 1-3 (D.E. # 131-6, hereinafter "RFA"). Defendant Moreno is a CBN police officer. Tr. at 81-83. He was appointed a special conservator of the peace by court order, which empowered CBN police officers to enforce all laws on CBN's property co-extensively with the Virginia Beach public police force. Tr. at 127-28.

Moreno was driving on patrol when he observed Plaintiff operating the vehicle on an access road that leads into a parking lot in front of CBN's corporate support building. Tr. at 44-51. The public (including Plaintiff himself) uses the access road, and public access is not impeded. Tr. at 172-73. As he passed Plaintiff, Moreno saw a white rejection sticker on the car. Tr. at 44, 51. The white color indicated that the sticker was expired as it had faded from its original pink color. Tr. at

---

[1] Defendant invoked Fed. R. Civ. P. 50. Because the trial was a bench trial, the motion should have been made pursuant to Fed. R. Civ. P. 52. Tr. at 192. However, "the mistake was a technicality" and the Fourth Circuit has cited with approval the notion that a "mistake of using the wrong name on these motions should be disregarded." Sailor v. Hubbell, Inc., 4 F.3d 323, 325 n.2 (4th Cir. 1993).

57. Officer Moreno then turned his car around, caught up with Plaintiff, and approached Plaintiff. Tr. at 49-50, 175. At the time of Moreno's approach, the vehicle was stopped. Tr. at 49, 53.[2] Moreno asked Plaintiff for his license and registration, and he pointed out the rejection sticker. Tr. at 52; RFA 20, 23. Plaintiff introduced no other evidence of any other motive for the stop.

Plaintiff's case largely rises and falls on the central issue of whether Defendant Moreno was justified in his initial stop of Plaintiff. The Court finds that Moreno's initial stop of Plaintiff was justified. Officer Moreno had reasonable suspicion to investigate Plaintiff's operation of a vehicle bearing a rejection sticker. See Reel v. Commonwealth, 31 Va. App. 262, 269, 522 S.E.2d 881, 884 (2000) (vehicle with rejection sticker "has expressly been found to have a mechanical defect of such magnitude that the legislature has declared the vehicle unsafe to operate until the defect is repaired"). Virginia law provides that, "when an officer sees a vehicle being operated with a rejection sticker, he knows the vehicle has been determined to have defective equipment, and this knowledge provides reasonable suspicion for the officer to conduct an investigatory stop to determine whether the defective equipment has been repaired." Id at 270, 885.

Nonetheless, Plaintiff claims that Moreno lacked reasonable suspicion to stop him because Plaintiff was not seen driving on a "highway." Plaintiff contends that because CBN's property is private, the access road cannot be considered a "highway" and that therefore Moreno could not stop him until he drove off CBN's property. Tr. at 198-99. Plaintiff's theory is based upon a

---

[2]Plaintiff previously stressed that he was outside the vehicle when Moreno approached. Under the admitted Requests for Admission, Plaintiff was seated in the driver's seat at the time of Moreno's approach. RFA 19. Plaintiff's wife testified at trial that he was outside the car. Tr. at 19. Plaintiff's location is, however, wholly irrelevant given the undisputed testimony that Moreno observed Plaintiff driving the vehicle prior to his approach.

3

misinterpretation of the relevant statutes and is contrary to common sense. Virginia Code § 46.2-100 states that:

> "Highway" means the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

Under this definition, if the public has access to any roadway, the way is considered a "highway" and police are authorized to enforce laws there. Mitchell v. Commonwealth, 26 Va. App. 27, 31, 492 S.E.2d 839, 841 (1997) ("In unambiguous language, the Court has ruled that the definition of 'highway' includes 'ways on *private property* that are open to public use for vehicular travel.'") (emphasis in original and citations omitted); see also Furman v. Call, 234 Va. 437, 362 S.E.2d 709 (1987) (finding parking area of private condominium complex a highway). Such an interpretation certainly comports with ensuring the safety of the public, as Plaintiff's interpretation would make any private property a no-man's land for law enforcement. If the roadway is not open to the public, then an ordinance must be passed giving law enforcement the right to enforce laws there.[3] Here, the area where Moreno saw Plaintiff driving (whether characterized as a parking lot, access road, or

---

[3] The second clause in the definition does not restrict the first as Plaintiff contends. As explained in Mitchell v. Commonwealth, "the legislature clearly expanded the definition of 'highway' to provide law enforcement agencies additional authority to act in those instances where roads that otherwise would be deemed private roads have been designated 'highways' by local ordinance." 26 Va. App. at 32, 492 S.E.2d at 841.

driveway) was open to the public,[4] so it is a "highway."[5] Virginia Code § 46.2-1163 requires valid inspection stickers for vehicles operated on a highway. Virginia law further provides that it is unlawful to operate a vehicle on a highway with defective or unsafe equipment that must be approved through inspections. Va. Code § 46.2-1003. Finally, Virginia Code § 46.2-1157(A) makes it unlawful for an operator of a vehicle on a highway to fail to submit the vehicle for an inspection or to have the defects noted in an inspection corrected. Thus, Moreno was completely justified in stopping Plaintiff to investigate his undisputed violations of the law.

Now the Court turns to the facts relevant to the other issues in the case:

Moreno testified that when he approached Plaintiff, Plaintiff had his fists clenched and that he stood straight up and said, "Let's go, darling." Tr. at 50, 56, 58, 89; RFA 34. Moreno interpreted that comment as directed to him. Id.; RFA 35. Moreno continued to ask Plaintiff for his license and registration. Tr. at 94. Va. Code § 46.2-104 requires drivers to carry their license and registration and to produce them to law enforcement officials at their direction. See also Tr. at 94. Instead of complying with Moreno's request, Plaintiff began to scream and yell. Tr. at 52, 58. Moreno described Plaintiff as belligerent. Tr. at 90. Moreno said he felt threatened and feared bodily harm to himself. Tr. at 90-91.

---

[4] Plaintiff introduced no evidence of any restrictions on public access to CBN's property, such as gates, signs, or guards, to rebut the testimony that established public access. As Plaintiff bears the burden of proof as to whether the Fourth Amendment was violated pursuant to 42 U.S.C. § 1983, Figg v. Schroeder, 312 F.3d 625, 642 (4th Cir. 2002), he did not carry his burden in establishing that Moreno lacked authority to enforce laws at CBN and that the stop did not comport with the law.

[5] Additionally, Moreno would have reasonably assumed that Plaintiff came to CBN by traveling on the undisputably public roads that bound CBN's property or that he was about to leave to travel on those roads. Tr. at 86-87.

Despite hearing Moreno's request for identification, Plaintiff did not produce his license and registration. Plaintiff put his hand in his pocket, and Moreno told him to take it out. Tr. at 175; RFA 28. Plaintiff did not tell Moreno that his license was in his pocket or that he was trying to comply with Moreno's directives. Tr. at 181-82; RFA 25-26. Moreno requested Plaintiff's license and registration many times. Tr. at 175, 20-21, 31, 105. At no point did Plaintiff say that he would cooperate or produce his license and registration or any other identification documents. Tr. 33. Plaintiff then attempted to get into his car and leave the scene despite understanding that Moreno wanted him to stop, Tr. at 59, 175-76, and despite Moreno's directive that he should not get in the car. Tr. at 176. Moreno feared Plaintiff could have access to a weapon once he was in the car. Tr. at 91. Plaintiff moved to the passenger side of the car, opened the passenger door, and climbed in. Tr. at 59, 176. Moreno continued to ask for license and registration, knocked on the door, opened the door, and told Plaintiff to exit. Tr. at 65-67, 103, 176-77; RFA 38-40. Plaintiff did not comply. Moreno kept trying to open the car door and Plaintiff kept trying to shut it; during this struggle, the car door was shut on Moreno. Tr. at 65-67, 103, 115, 185-86; RFA 43-45, 47-48.

Moreno told Plaintiff pepper spray would be used if he did not exit the vehicle. Tr. at 95; RFA 49. Plaintiff did not exit and shut the door again. Tr. at 70, 105; RFA 50. Moreno then opened the door and deployed a one-second burst of pepper spray. Tr. at 70, 71, 85, 105, 116. Plaintiff wiped his face, but he did not cough, his face did not swell or show redness, his eyes were not watery, and his breathing appeared normal; he showed no observable effects of the spray and did not appear in distress. Tr. at 92-93, 116, 131-32, 169-70. Plaintiff did not complain about any effect of the pepper spray. RFA 52, 53, 88, 89. Even by Plaintiff's account, he did not have trouble breathing. Tr. at 179. He did not request any medical assistance. Tr. at 93. Moreno's application

of pepper spray was compliant with the training he had received on when and how to deploy pepper spray. Tr. at 84-85. Moreno was advised that subsequent police testing of the spray revealed it was inert. Tr. at 93.

At some point during this encounter, Moreno at least once attempted to secure Plaintiff by grabbing his arm.[6] Tr. at 69. Plaintiff at least once performed a martial arts move designed to free his arm from Moreno's grip. Tr. at 189-90; RFA 58-60. Plaintiff finally then complied with Moreno's directive to exit the car. Tr. at 72; RFA 62. He still failed to produce license and registration. RFA 63-65. Plaintiff was then handcuffed by Moreno and placed into a squad car for transportation to the Virginia Beach City Jail. Tr. at 73-76; RFA 69, 80, 84. Plaintiff did not complain about the handcuffs. Tr. at 93; RFA 73, 87. Moreno asked Plaintiff if he was ok, and Plaintiff admitted that he did not respond. Tr. at 179, 191, 93. Plaintiff was taken before a magistrate. RFA 95. He was charged with obstruction of justice and assault and battery of a police officer. Tr. at 80; RFA 101, 102. Plaintiff did not request medical assistance. RFA 81, 105. Plaintiff was processed and released that same day. Tr. at 190; RFA 108. Ultimately, the obstruction of justice charge was nolle prossed and the assault and battery charge dismissed.

As set forth above, the initial stop was justified. Even if the stop had not been justified, however, Plaintiff had no legal right to resist either during the investigatory phase of the incident or during the arrest phase of the incident. Commonwealth v. Hill, 264 Va. 541, 548, 570 S.E.2d 805, 808-09 (2002) (holding no right to resist investigatory stops whether justified or not). Plaintiff

---

[6]Moreno testified that he tried to grab Plaintiff by the wrist prior to pepper spraying. Tr. at 69. Plaintiff testified that he was grabbed after pepper spray was applied. Irrespective of the discrepancy in timing, Plaintiff admittedly escaped from Moreno's control by taking evasive action. That is the fact relevant to the Court's determination.

claims that he should not have been arrested for obstruction of justice because he does not believe a failure to produce identification can constitute obstruction of justice. His arrest on this charge, however, was not solely a result of his failure to produce identification. Rather, he actively impeded Moreno's investigatory efforts by refusing to comply and attempting to leave, and he actively resisted arrest. Additionally, probable cause was established that Plaintiff did assault Moreno when the car door was shut on him. Further, Plaintiff could have been cited for the original offense of operating a vehicle without a valid inspection as well. His arrest and the ensuing charges against him were proper. Plaintiff's claims of false arrest (Count One), illegal imprisonment and wrongful detainment (Count Two), and malicious prosecution (Count Five) fail because the Fourth Amendment was not violated,[7] and because Moreno was not the individual responsible for charging and prosecuting Plaintiff.

The last remaining claim is Count Three, claiming Moreno used excessive force in pepper spraying and handcuffing him.[8] Plaintiff asserted that he was entitled to resist because he believed his arrest was unlawful and that therefore any force used to arrest him was unlawful. Plaintiff is wrong; his arrest was not unlawful, and he was not entitled to resist as set forth above. Under

---

[7]The Fourth Circuit has held that: "§ 1983 does not empower a plaintiff to bring a claim for malicious prosecution *simpliciter*. What is conventionally referred to as a '§ 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000). Likewise, Count One ("False Arrest"), Count Two ("Illegal Imprisonment and Wrongful Detainment"), and Count Three ("Excessive Force" used during Plaintiff's arrest) are also restated Fourth Amendment claims. See Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001); Graham v. Connor, 490 U.S. 386 (1989).

[8]Plaintiff testified at trial that Moreno unholstered his gun and pointed it at him. Tr. at 178. No other witness corroborated this account, including Plaintiff's wife. Plaintiff's testimony is not credited because it contradicts admitted Request for Admission 29, which states that Moreno did not remove his gun during the encounter. Therefore, the Court finds that Moreno did not unholster and point his gun at Plaintiff.

Graham v. Connor, 490 U.S. 386, 396 (1989), whether a law enforcement official used excessive force requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. The analysis requires "objective reasonableness" "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. As noted by the Supreme Court "police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation." Id. at 397.

Moreno's brief application of pepper spray (even if it was not inert) was in accordance with his training, was a last resort, was warranted by Plaintiff's failure to comply with and his active efforts to resist Moreno's directives, and was justified by Moreno's reasonable concern that Plaintiff could be violent or near a weapon. The spray was not applied to inflict pain and it caused no lasting injury. The force was objectively reasonable and not excessive. See Jackson v. City of Bremerton, 268 F.3d 646, 652-53 (9th Cir. 2001) (holding that use of chemical irritant was reasonable given individual's active interference with officers); Wagner v. Bay City, Texas, 227 F.3d 316, 324 (5th Cir. 2000) (holding that use of chemical spray was reasonable where individual was resisting arrest); Monday v. Oullette, 118 F.3d 1099, 1104-05 (6th Cir. 1997) (holding that use of pepper spray was reasonable where officer warned that he would discharge it if individual did not cooperate).

Plaintiff may also be claiming that the failure to provide him medical assistance after the spray was applied constitutes excessive force. However, the failure to provide assistance has never

before by itself been determined to be excessive force in the Fourth Circuit,[9] and this Court declines to expand § 1983 liability to this extent. Further, even if the failure to provide post-pepper spray assistance could constitute excessive force, Moreno did not act unreasonably in not providing such assistance. None of the officers observed any objective signs of distress, Plaintiff never requested medical assistance (or any type of assistance for that matter) from Moreno, and he never told Moreno he was in pain. In fact, Plaintiff testified that he failed to respond in any manner when Moreno asked him if he was okay. These facts coupled with Plaintiff's failure to introduce any evidence of resulting injury would doom any such claim.

Next, Plaintiff asserts that his handcuffing constituted excessive force. He claims he suffered pain while the cuffs were applied, Tr. at 178, although he did not complain of any pain at the time. He did not claim any injury that persisted after the handcuffs were removed. Moreno followed the police procedures in applying double lock cuffs. Tr. at 91-92. He attempted to increase Plaintiff's comfort by ensuring a pinky finger's width between the cuffs and Plaintiff's wrist. Tr. at 92. Plaintiff introduced no evidence that the cuffs were applied in order to cause him pain. Plaintiff failed to establish any entitlement to relief on this claim. Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999) ("[plaintiff's] basis for her excessive force claim - that her handcuffs were too tight . . . is so insubstantial that it cannot as a matter of law support her claim under . . . the Fourth Amendment . . . or the Fourteenth"); Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) (noting that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified, as here, in effecting the underlying arrest"); Cooper v. City of Virignia

---

[9] Plaintiff has not claimed that Defendants were deliberately indifferent to a serious medical need.

...

Beach, 817 F. Supp. 1310, 1319 (E.D. Va. 1993), aff'd, 21 F.3d 421 (4th Cir. 1994); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990).

In sum, Plaintiff's claims each fail as a matter of law, and the Court **GRANTS** Defendant's Motion for Judgment as a Matter of Law.

Plaintiff is ADVISED that he may appeal from this Memorandum Order and Opinion and from the Court's prior dismissals of claims and Defendants by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Memorandum Order and Opinion. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order and Opinion to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

/s/
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 3, 2011